**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN V. NORRIS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 06 C 2793 |
| FRANCIS FERRO, | ) | |
|     Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff John Norris drove his friends, Rodney Walls and Charles Hinch, to two different 24-hour supermarkets (Jewel and Cub Foods) in the early morning hours of August 27, 2005. Walls parted company with Norris and Hinch at the Jewel, but Hinch returned to Norris' vehicle with a variety of purloined sirloins (a total of four strip steaks, three top sirloin steaks, and one tenderloin steak). Witnesses called police, and Francis Ferro, a City of Joliet police officer, arrested Norris for retail theft. Following his arrest, Norris sued Ferro pursuant to 42 U.S.C. § 1983, contending that Ferro violated his Fourth Amendment rights by unlawfully arresting him and maliciously prosecuted him and intentionally inflicted emotional distress in violation of Illinois law. Ferro's motion for summary judgment is before the court. For the following reasons, Ferro's motion is denied.

**I.**     **Background**

    **A.**     **Local Rule 56.1**

Under Local Rule 56.1, a party seeking summary judgment must submit a statement of material facts, consisting of short numbered paragraphs accompanied by citations to admissible evidence. Loc. R. 56.1(a). "Failure to submit such a statement constitutes grounds for denial of the motion." *Id*. Here, Ferro did not submit a separate statement of facts and, instead, included a

fact section consisting of numbered paragraphs in his memorandum in support of his motion for summary judgment. The court will construe this as his Local Rule 56.1(a) statement of facts, but encourages counsel to more carefully follow the rules in the future.

This is not the end of Ferro's difficulties with Local Rule 56.1(a), as Norris correctly notes that Ferro's statement of facts does not include a citation to the record after every sentence. For the most part, this is not a problem as each paragraph of Ferro's fact statement includes citations to the record and the evidentiary basis for his facts is largely clear. The court, however, is not required to scour the record to unearth evidentiary support for a party's position. *See Ammons v. Aramark Uniform Services, Inc.,* 368 F.3d 809, 817-18 (7th Cir. 2004). Thus, to the extent that any facts are not supported by citations to the record, those facts are stricken. With this understanding, the following facts are derived from the parties' Local Rule 56.1 statements.

### B.     Facts

The relevant facts are straightforward. On August 27, 2005, John Norris left work around 1:00 or 2:00 a.m. While driving, he spotted two friends, Rodney Walls and Charles Hinch, near the intersection of Chicago and McDonough Streets in Joliet. Norris stopped to chat and Hinch asked Norris for a ride to a grocery store in exchange for gas money. According to Norris, he never asked Hinch or Walls why they were walking in the area of Chicago and McDonough Streets or what they needed to get from the grocery store.

Hinch and Walls got into Norris's car, and Norris drove to the Cub Foods in Joliet on Larkin Avenue. Hinch and Walls went into the store and Norris waited in the car. After five to ten minutes, Hinch and Walls emerged. Norris testified at his deposition that Walls was not

carrying anything, and Hinch, who was wearing a t-shirt and jeans, was holding a public aid Link card and what appeared to be a receipt.

Hinch said that his Link card did not work and asked Norris to take him across the street to the Jewel Foods Store. Norris complied and parked close to the store. Once again, Hinch and Walls went into the Jewel while Norris stayed in his car. Norris testified that at this point, he still did not know what Hinch or Walls wanted to get from the supermarket.

From his vantage point in his car, Norris saw Walls run from the Jewel, then disappear around the back of the building. According to Norris, Walls did not have anything in his hands, have anything bulky under his clothes, throw anything, or come anywhere near the car Norris was sitting in, and no one chased after Walls. Norris then looked into the glass windows on the front of the Jewel and saw Hinch walking towards the exit.

Norris started his car and drove to the front of the store to pick up Hinch. He saw a female cashier (later identified as Jewel employee Pam Gibbs) walking next to Hinch and talking to him. Norris could clearly see Gibbs and she could see him as she was within ten to fifteen feet of Norris's car. According to Norris, Hinch and Gibbs appeared to be having a normal conversation and Gibbs did not look upset. Norris did not notice anything bulky under Hinch's shirt.

Hinch then got into the passenger side of the car and told Norris to "go, go, go." Norris pulled away at a normal rate of speed without asking for clarification, and testified that he may have run a red light. As Norris drove, Hinch began pulling packages of meat from his pants and shirt and attempted to hide the filched foodstuffs in Norris's car. Norris testified this was the first time he knew that Hinch had taken anything from the Jewel.

Norris also testified that as he drove, he noticed a police officer, who turned out to be staking out his vehicle. The officer subsequently stopped Norris's car to grill the occupants about the missing meat. The traffic stop transpired because Officer Ferro had patrolled the Jewel supermarket, where another Jewel employee, Mark Wojas, stated that steaks had been snatched and provided a description of the getaway vehicle which matched Norris's car. After stopping Norris's car, Officer Ferro told Norris and Hinch that there was a possible retail theft at a nearby Jewel and that Norris's car matched the description given at the store. Another officer approached the vehicle on the passenger side and saw loose packages of meat in the car.

The officers recovered three packages of meat with Cub Foods labels and five packages of meat with Jewel labels. When Norris and Hinch were unable to produce a receipt for the meat, they were handcuffed and transported back to the Jewel in separate cars. Both Jewel employees (Wojas and Gibbs) told Officer Ferro that Norris had not entered the Jewel or taken any meat. Gibbs also told Officer Ferro that she saw Norris drive away with Hinch after he left the supermarket. She stated that Hinch set off theft sensors as he exited the Jewel. In addition, Wojas told Ferro that he saw Walls run across the side of the store into the alley and saw Hinch run out of the entrance door straight towards him. Wojas also testified that as Hinch fled from the Jewel, he could see that he had bulges under his clothing and was trying to prevent items secreted in his clothing from falling out.

After interviewing Gibbs and Wojas, Officer Ferro arrested Norris for retail theft and took him to the Joliet Police Station. During the trip to the Joliet Police Station, Norris denied that he had done anything wrong and said he did not know that Walls and Hinch intended to burgle beef. Norris also testified that Ferro told him that if it wasn't for Norris's criminal history,

Norris would be going home instead of to jail. At the police station, Norris gave a written statement wherein he again denied he had any prior knowledge about his companions' plan to shoplift steaks.

Ferro completed his initial police report for the incident later that day, on August 27, 2005. The initial report did not specify who entered the Jewel and misappropriated meat. Instead, it merely stated that Ferro was informed that Hinch and Norris had stolen meat.

The following day, Officer Ferro filed a supplemental report stating that witnesses told him that both Norris and Hinch entered the Jewel and remained inside for fifteen minutes. The report also indicated that Ferro received a security videotape from Jewel showing Norris and Hinch entering and leaving the store. Ferro never viewed any such videotape. On August 31, 2005, Ferro filed a second supplemental report. In this report, Ferro stated that Gibbs identified Norris as the driver but stated that he had not been in the store.

It turned out that this incident was not Norris's first encounter with the law based on shoplifted steaks. Specifically, at the time of his arrest, Norris was out on bond for felony retail theft based on the theft of meat. After his arrest based on the Jewel steak swiping incident, Norris was sentenced to three years for the prior retail theft charge. He was then sent to the Will County Jail to await trial based on the latest meat misappropriation. During a grand jury hearing, Officer Ferro incorrectly represented that Norris had entered the Jewel and stolen steaks. In his deposition for this case, however, Ferro testified that Norris did not enter the Jewel or personally shoplift any meat.

Norris spent 358 days in jail before the Will County prosecutor dropped the charges against him on the eve of trial. Norris was again arrested and charged with retail theft of meat in 2007.

## II. Discussion

### A. Standard for Motion For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading;" rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.,* 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. Id.

### B. Wrongful Arrest – Probable Cause

In order to succeed on a claim for unlawful arrest under 42 U.S.C. § 1983, a plaintiff must establish that he was arrested without probable cause. *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996). Police officers have probable cause to arrest when "at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964).

The probable cause test is an objective one, and once an officer establishes "cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence." *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998). Moreover, probable cause is an absolute defense to any claim under § 1983 against police officers for wrongful arrest. *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006).

Norris contends that Officer Ferro's post-arrest police reports and grand jury testimony are inconsistent with the uncontroverted evidence regarding Norris's involvement with the meat heist from the Jewel. In his initial report, Ferro stated merely that he had been informed that Hinch and Norris had stolen meat. In the first supplemental report, however, Ferro stated that witnesses told him that both Norris and Hinch went into the Jewel. Ferro also stated that a Jewel security videotape showed Norris and Hinch entering and exiting the Jewel, even though he never viewed any such videotape and it is undisputed that Norris drove what turned out to be the getaway car, as opposed to personally pilfering meat.

In Ferro's second supplemental report, he recanted and stated that the witnesses identified Norris as the driver but told him that Norris never entered the store. Nevertheless, at the grand jury hearing, Ferro again stated that both Norris and Hinch entered the Jewel, selected steaks, and left the store without paying. Additionally, Norris alleges that Ferro told him that if it weren't for his criminal history, he would be going home instead of to jail.

According to Norris, based on these facts, a jury could find that there was no probable cause and/or that there was an unconstitutional motivation for his arrest. Norris also argues that these inconsistencies create a question of fact as to what Ferro actually knew at the time of the arrest and, therefore, whether Ferro had probable cause to arrest him.

Ferro does not specifically address these arguments. Instead, he argues that, based on a theory of accountability, he had probable cause to arrest Norris based on the witnesses' statements that the person who set off the theft sensors by running out of the Jewel carrying what appeared to be packages under his clothing jumped into Norris's car, their description of the getaway car, the fact that Ferro pulled Norris's car over and saw packages of meat on the passenger seat floor of the car in plain view, and the inability of Norris and Hinch to produce a receipt.

The problem with Ferro's position is that at the summary judgment stage, the court cannot assess witnesses' credibility. If the court could act as a fact-finder and accept the facts supporting Ferro's theory of accountability, it would conclude that he had probable cause to arrest Norris. However, the record contains multiple conflicting versions of the meat-stealing incident, as recounted by Ferro himself. Ferro started off with the story that he wants the court to accept today, but then changed that story in critical ways, and even went so far as to falsely testify before a grand jury that Norris had entered the Jewel.

"A court's role [on summary judgment] is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable [material] fact." *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006). Thus, "if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact." 10A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE, Civil 3d §

2726 at 446 (1998); *see also Askew v. City of Chicago*, 440 F.3d 894, 896-97 (7th Cir. 2006) (holding that "the sort of inconsistencies and glitches that characterize real investigations do not disentitle police to rely on eyewitness statements" but noting that "[i]f these subjects [as to which the plaintiff claimed inconsistencies existed] were material, then there would be work for the jury to do").

The court finds that the questions regarding Ferro's credibility are so substantial that at the summary judgment stage, it cannot accept *any* of his testimony regarding what he knew and when. The fact-finder will have to consider this issue afresh at trial. Accordingly, based on the present record, the court cannot find as a matter of law that Ferro had probable cause. He is, therefore, not entitled to summary judgment on Norris's § 1983 claim.

### C. Wrongful Arrest – Qualified Immunity

In the alternative, Ferro argues that he is entitled to qualified immunity in connection with Norris's wrongful arrest claim. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *McKinney v. Duplain,* 463 F.3d 679, 683-84 (7th Cir. 2006) (qualified immunity "shields government officials against suits arising out of their exercise of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated") (internal citations and quotations omitted).

A defendant is entitled to qualified immunity unless: (1) a plaintiff establishes facts showing the violation of a constitutional right; and (2) that right was clearly established at the

time of the defendant's alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808, 816 (2009). Moreover, in addressing qualified immunity, the nonmovant's version of the facts must be accepted as true. *Payne v. Pauley,* 337 F.3d 767, 775 (7th Cir. 2003). Finally, a police officer may act mistakenly, yet reasonably, and thus be entitled to qualified immunity, even if he lacked probable cause to effectuate an arrest. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

In his response to Ferro's motion for summary judgment, Norris contends that Ferro waived any ability to rely on qualified immunity because he did not raise this defense in a timely manner. Perhaps tipped off by this argument, in Ferro's reply memorandum, he contends that if the court denies his motion for summary judgment as to Norris's § 1983 claim on the merits, his motion for summary judgment should still be granted because he is entitled to qualified immunity.

The court need not address Norris's arguments about the timeliness of Ferro's qualified immunity argument because it is a clear loser due to the factual dispute about what Ferro knew and when. Thus, the court finds that even assuming that Ferro's qualified immunity argument is properly before the court, it is unavailing.

### D. Malicious Prosecution and Intentional Infliction of Emotional Distress

Ferro's motion for summary judgment focuses exclusively on the alleged existence of probable cause. His reply memorandum devotes six lines of text to Norris's state law claims of malicious prosecution and intentional infliction of emotional distress and asserts that if probable cause bars Norris's § 1983 claim, Norris's state law claims also fail. Because the court found that probable cause turns on disputed issues of fact and Ferro does not present any other

arguments about Norris's state law claims, Ferro is not entitled to summary judgment as to these claims.

**III.    Conclusion**

Ferro's motion for summary judgment [#133] is denied in its entirety. This case is set for status on April 30, 2009, at 11:00 a.m. At this time, the parties should be prepared to agree to a firm trial date, as well as all other related dates. The court also thanks Norris's appointed counsel (David E. Schoenfeld and Jacob Smith of Grippo & Elden LLC) for their zealous advocacy on behalf of their client.


DATE:   April 17, 2009

Blanche M. Manning
United States District Judge